**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 22-cv-03934 |
| | ) |
| NORTHWESTERN UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

**JOHN'S MOTION FOR PERMISSION TO PROCEED UNDER A PSEUDONYM**

John, a student at Defendant Northwestern University ("Defendant" or "NU"), files this Motion to proceed under a fictitious name in his Complaint and all other filings in the case to maintain and protect his privacy and reputational interests as he seeks redress against NU for its mishandling of a non-witnesses allegations that claimed John physically assaulted Jane and also disclosed his suicidal ideations to NU. John also seeks to maintain this female student's privacy by referring to her as Jane Roe ("Jane"). All of John's causes of action arise from the NU's conduct in the course of a confidential disciplinary investigation and adjudication proceeding, and involve highly sensitive, personal matters, including the underlying events on September 25, the allegations of John being a "threat to himself and others," allegations that John put Jane in a chokehold, allegations that Jane tried to light John's face and hair on fire, among the other allegations in the complaint.

In bringing this suit, John seeks to clear his name. Inclusion of John's name in the Complaint and court filings would result in the public association of his name with the NU's erroneous finding that John was a threat to himself or others, thereby defeating the very purpose of his suit and causing the reputational and discriminatory harm that the suit seeks to prevent.

1

If he is forced to reveal his identity in the Complaint, it is more likely that Jane's identity would also become public knowledge. NU is fully aware of the actual identities of John and Jane and, as explained below, will not be prejudiced in any way by John's use of these pseudonyms for the filings in the case – all of which will be publicly available.

In the alternative, John requests this Court allow pseudonyms until dispositive motions are ruled on. *See, Malibu Media, LLC v. Reynolds*, No. 12 C 6772, 2013 WL 870618, at **7-8 (N.D. Ill. Mar. 7, 2013) (allowing the case to proceed using pseudonyms with a reconsideration of the decision following the ruling on dispositive motions); *see also, EEOC v. SPOA, LLC*, 2013 U.S. Dist. Lexis 148145, *12 (D. Md., Oct. 15, 2013)(allowing Title VII plaintiff to remain anonymous in court filings, but requiring the plaintiff to use her legal name if jury trial occurs).

## II. FACTUAL BACKGROUND

The facts underlying this lawsuit are outlined in detail in John's Complaint and will not be repeated here. (Dkt. 1). John attends the NU Qatar campus. (Comp. ¶ 11). NU's mishandling of the third-party accusation and its deeply flawed, biased disciplinary process resulted in John's nearly one-year suspension. During that one year, John was precluded from setting foot on campus or the Qatar Foundation, which was even more devastating to him because he could not return to his home country of China because of China's strict Covid-19 restrictions. (*Id.* at ¶¶ 79-80, 123). John also lost his scholarship. John lost one year of his education while being essentially trapped in Qatar and unable to see his friends or family. (*Id.* at ¶ 80). As a result of NU's actions, John's academic and professional prospects have been shattered and his economic future has been severely compromised. (*Id.* at ¶ 72). John's educational record will

2

permanently reflect that he was suspended from NU for "being a threat to himself or others" based on the allegation that he physically assaulted a female student. (*Id.* at ¶124).

NU will report his disciplinary record to third parties, including schools to which he might try to transfer, graduate schools, prospective employers, and employers. Through its unfair Student Policy, NU's finding that he physically assaulted a female classmate and NU's branding John as a "threat to himself or others" will undoubtedly have lasting social and reputational harm. NU's conduct has caused John severe emotional and physical distress, including panic, loss of appetite, an inability to sleep through the night, nightmares, and anxiety, all requiring counseling. He has expressed a desire to kill himself more than once. (*Id.* ¶ 72). For all these reasons, John brings suit to redress these harms.

### III. ARGUMENT

This Court should grant John's Motion to prevent the unnecessary disclosure of both Jane's and his identities, which will protect their privacy and reputational interests, guard against the imposition of additional damages, and will not disadvantage NU in any way.

**A. General Principles Governing Pseudonymous Filings**

Although Fed. R. Civ. P. 10(a) requires that a complaint name all parties, federal courts in this Circuit permit the use of pseudonyms when the potential harm to the party requesting anonymity outweighs the possible prejudice to the opposing party. Under well-settled precedent in this Circuit, "'the presumption that parties' identities are public information, and the possible prejudice to the opposing party from concealment, can be rebutted by showing that the harm to the [party requesting anonymity] … exceeds the likely harm from concealment." *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004); *see also Doe v. Elmbrook Sch. Dist.*, 658 F.3d 710, 721 (7th Cir. 2011) (citing City of Chicago), aff'd en banc

3

in relevant part, 687 F.3d 840, 842-43 (7th Cir. 2012). The decision of whether to permit parties to proceed anonymously is "left within the discretion of the district court." *Elmbrook Sch. Dist.*, 658 F.3d at 721. District courts in this Circuit permit a party to proceed anonymously "where the party has a privacy right so substantial as to outweigh the 'customary and constitutionally embedded presumption of openness in judicial proceedings.'" *Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137, 139 (S.D. Ind. 1996) (citations omitted). "Courts dealing with requests to proceed under fictitious names have avoided trying to articulate any mechanical legal test." *Id.* Because "[t]here is no simple formula" for determining when to allow the use of pseudonyms, the courts have identified several "factors that should be considered to determine whether a plaintiff's interest in privacy is so significant as to outweigh the strong presumption favoring public identification of litigants." *Id.* at 139-40.

These include the following non-exclusive factors: "(1) whether the plaintiff is challenging governmental activity; (2) whether the plaintiff would be required to disclose information of the utmost intimacy; (3) whether the plaintiff would be compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution; (4) whether the plaintiff would risk suffering injury if identified; (5) whether the party defending against a suit brought under a pseudonym would be prejudiced; (6) the public interest in guaranteeing open access to proceedings without denying litigants access to the justice system." *Id.* at 140.

**B. The Factors Used to Determine Whether to Permit Filing Under a Fictitious Name Heavily Weigh in John's Favor**

The factors set forth above when viewed in totality strongly weigh in favor of permitting John to use pseudonyms in this case.[1] John and Jane both have substantial privacy rights that

---

[1] The first and third factors are not applicable to this case, as John is not challenging governmental activity and he will not be compelled to admit an intention to engage in illegal conduct. All of the other *City of Indianapolis* factors apply to this case and weigh in favor of allowing John to proceed anonymously.

4

outweigh the public's interest in access to the identities of litigants and the customary presumption of openness in judicial proceedings. Prosecution of this lawsuit will compel the disclosure of highly personal information in the form of explicit details of the September 25th incident, Jane's "physical manifestations" of the stress associated with it, John's suicidal ideations, John being branded as "a threat to himself and others," and the explicit details of the confidential disciplinary investigation, sanction, and decision. Because this case seeks redress for NU's mishandling of misconduct allegations, he has a reasonable fear that he will suffer retaliation, social stigmatization, and reputational harm if he is denied the opportunity to pursue this action without a pseudonym. There is no risk of prejudice to NU. NU knows the true identities of John and Jane. All of John's filings in the case will be publicly available. Only John's and Jane's names will be shielded from public disclosure. Indeed, permitting John to use these pseudonyms will further NU's interest in maintaining the confidentiality of its disciplinary proceedings, particularly in the context of investigations into charges of misconduct, like those leveled against John in the underlying proceeding.

Although the public has a legitimate interest in the legal issues John raises in his Complaint, including issues of fairness, gender discrimination, and contractual obligations owed by colleges to accused students in disciplinary proceedings involving misconduct allegations, the actual identities of the individuals are of minimal importance to the public. John is not a public figure and has maintained the confidentiality of his identity. He has revealed information about the student disciplinary proceeding to which he was subjected only to a small inner circle of persons with a need to know, including his immediate family, NU administrators, employees, and his attorneys. Finally, and perhaps most importantly, if the Court denies John's Motion, John will suffer the very harm that he is seeking to undo with the filing of his Complaint. Public

disclosure may serve not only as a deterrent to John but also to other wrongly accused students seeking redress through the only avenue available to them – the courts.

In *Doe v. Univ. of Notre Dame*, the court considered all of these factors and granted the plaintiff's pseudonym motion. *Notre Dame* involves similar facts to those in the instant case: Plaintiff Doe was a student at Notre Dame who filed a lawsuit alleging gender bias, among other flaws, in a University disciplinary process in which he was found responsible for dating violence and sexual harassment. *Id.* at *1, ¶¶ 1, 2. Plaintiff moved for permission to proceed pseudonymously and to maintain the privacy of the other student involved by referring to her as "Jane Roe." *Id.* at *2, ¶ 5. Notre Dame did not oppose the motion. *Id.* at 7. The Court granted Plaintiff's motion holding that Plaintiff's privacy rights were "so substantial as to outweigh the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Id.* at *8, ¶ 36 (internal citations omitted).

As was the case in *Notre Dame*, when considering all of the relevant factors, John's claims raise more than sufficient privacy concerns to justify proceeding anonymously. *See also City of Indianapolis*, 2012 U.S. Dist. LEXIS 24686, at *4-7 (granting plaintiff's pseudonym motion in the lawsuit seeking to challenge the Indiana sex offender registry, noting the case would require disclosure of information of the utmost intimacy, involved purely legal issues, and proceeding anonymously would not prejudice defendants because they would have access to plaintiff's personal information); *Doe v. Hartford Life and Acc. Ins. Co.*, 237 F.R.D. 545, 550 (D.N.J. 2006) (allowing plaintiff to proceed using a fictitious name where disclosure of plaintiff's bipolar disorder would risk stigmatization in his community and career); *Doe v. Std. Ins. Co.*, 2015 WL 5778566, at *3 ("To deny Plaintiff's request ... might not only prevent Plaintiff from proceeding on her claim but might also discourage others who suffer from a serious mental health condition from asserting their

6

claims for mental health benefits to which they are entitled…."); *Doe v. Massac Unit Sch. Dist. #1*, No. 12-CV-268-MJR-DGW, 2012 U.S. Dist. LEXIS 65403, at *1-3 (S.D. Ill. May 10, 2012) (granting pseudonym motion in the case involving alleged sexual abuse and psychiatric harm caused by the abuse); *Doe v. Provident Life and Accident Ins. Co.*, 176 F.R.D. 464, 465 (E.D. Pa. 1997) (Granting Plaintiff's requested anonymity to prevent disclosure of his mental illness and acknowledging the social stigma associated with mental illness and held the plaintiff's fear of stigmatization was reasonable because "the plaintiff may [ ] suffer irreparable harm to his professional reputation [from disclosure].").

**John addresses each of these factors in turn.**

**First**, this litigation will require the disclosure of information of the "utmost intimacy," including highly sensitive, personal information. Courts have allowed student-plaintiffs who have brought claims against colleges and universities stemming from investigations of misconduct to proceed anonymously, and a substantial number of colleges and universities have recognized this substantial privacy right by not opposing the student-plaintiffs' motion to proceed anonymously. *See, e.g., Doe v. Alger*, 317 F.R.D. 37, 42 (W.D. Va. Mar. 31, 2016) (holding plaintiff's "privacy interest outweighs the presumption of the openness of judicial proceedings"); *Doe v. Bell Atl. Bus. Sys. Servs.*, 162 F.R.D. 418, 420 (D. Mass. 1995) ("Courts have allowed plaintiffs to proceed anonymously in cases involving social stigmatization, a real danger of physical harm, or where the injury litigated against would occur as a result of the disclosure of plaintiff's identity."); *Doe v. Brandeis Univ.*, No. 1-15-cv-11557-FDS (D. Mass June 17, 2015) (permitting the use of pseudonym because student-plaintiff could be subjected to "social stigmatization" if his identity were disclosed in lawsuit against the university which found him responsible for sexual assault); *Doe v. Colgate Univ.*, No. 5:15-CV-1069, 2016 WL 1448829 (N.D.N.Y. Apr. 12, 2016) (granting plaintiff's motion to proceed under pseudonym after balancing the factors set out in *Sealed*

*Plaintiff*, 537 F.3d at 188–89); *Doe v. Univ. of Montana*, No. CV 12-77, 2012 WL 2416481 (D. Mont. June 26, 2012) (unsealing the case but maintaining plaintiff and accuser's anonymity through the use of pseudonyms, finding "that the interests of those individuals in avoiding undue embarrassment, harassment, and disclosure of sensitive private information outweigh the public's need to know their names"), at *3 ("To deny Plaintiff's request ... might not only prevent Plaintiff from proceeding on her claim but might also discourage others who suffer from a serious mental health condition from asserting their claims for mental health benefits to which they are entitled….").

This litigation requires the disclosure of "information of the utmost intimacy," as demonstrated by the details outlined in the Complaint, including information regarding Plaintiff's mental health, suicidal ideations, facts discussed in the confidential disciplinary proceedings, and the details of NU's findings. Other courts have permitted plaintiffs alleging similar claims against colleges and universities to proceed anonymously. John initiated this action to avoid the severe personal, reputational, educational, and economic harm he will suffer if NU's disciplinary proceedings are not overturned. If John's only avenue of recourse is public disclosure of his identity, he will sustain further damages. Accordingly, this factor weighs in favor of anonymity.

**Second**, "What harm is John seeking to avoid, and is John's fear reasonable?" John seeks to proceed using a pseudonym to minimize the reputational harm and social stigma attached to NU's finding of responsibility for abusive or harassing behavior. He further seeks to keep Jane's name confidential. No question being charged and found responsible for such misconduct by a prestigious educational institution bears a strong social stigma. *See, e.g., Doe v. Notre Dame*, supra, at *6 ("Further, being charged with and found responsible for sexual misconduct by a prestigious educational institution unquestionably bears a strong social stigma.").

**Third**, John could be subjected to retaliatory physical or mental harm should his name become public. NU is prohibited under federal law from disclosing John's identity and records related to his disciplinary proceeding to third parties without John's consent. *See Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g* (protecting the privacy interests of student education records). Further, NU conducts disciplinary proceedings with the utmost confidentiality. These privacy protections are in place at least in part to avoid physical or emotional retaliation against students involved in such proceedings. Due to the confidentiality of the underlying disciplinary proceeding, John has not yet been subjected to retaliation. However, should John's name become public concerning the underlying allegations of sexual misconduct, it is not unreasonable to believe that John could be subjected to retaliation.

**Fourth**, while John and Jane Roe are not "children," both are international students, young college students. Their ages and status as international students weigh in favor of permitting John's and Jane's identities to remain private. *See Doe v. Columbia Univ.*, 101 F. Supp. 3d 356, 360 n.1 (S.D.N.Y. 2015) ("Columbia consented to Plaintiff's request to proceed pseudonymously because of the sensitive subject matter and age of the students.").

**Fifth**, if John's identity becomes a matter of public record, the negative publicity it would bring to John would entirely defeat the purpose of the suit, which is to clear his good name and vindicate his rights. *See Doe v. Notre Dame*, supra, at *8, ¶ 34 ("Plaintiff will incur the injury he is seeking to avoid with the filing of his complaint if his identity is publically disclosed…"); *Doe v. Rostker*, 89 F.R.D. 158, 161-62 (N.D. Cal. 1981) (observing that a plaintiff may proceed pseudonymously if the use of his or her name would "indelibly connect" the plaintiff to a "stigmatizing" characteristic, regardless of the outcome of the litigation). The "indelible connection" to a "stigmatizing characteristic" – here NU's decision to find John responsible for being a "threat to himself and others" for allegedly physically assaulting a classmate and

9

expressing suicidal ideations – is precisely the reputational harm that John will suffer if required to use his actual name. In today's interconnected web of social media and cancel culture, John's name would be forever related to NU's erroneous finding that John was "a threat to himself and others" for the alleged physical assault of Jane and for expressing suicidal ideations, regardless of the outcome of this lawsuit. Both John and Jane are vulnerable to the possible harms of disclosure: they would be instantly identifiable through Internet searches and would carry the stigma of disclosing the highly personal details of the facts underlying this complaint, causing substantial, irreparable harm to their future educational opportunities, job searches, and family and personal relationships, which are all exacerbated by them seeking further career or education advancement in foreign countries.

Additionally, if John's identity is made public, he will almost certainly be severely hampered in his future educational prospects and employment opportunities. *See, e.g., Brandeis*, 2016 U.S. Dist. LEXIS 43499, at *93 (Being found "guilty [of] sexual misconduct can also have significant consequences off-campus. Post-graduate educational and employment opportunities may require disclosure of disciplinary actions taken by a student's former educational institution."). Under such circumstances, pseudonymous litigation is necessary and appropriate, and no other measure would accomplish such a purpose.

**Sixth**, NU will not suffer any prejudice or be unfairly disadvantaged in defending this case if John proceeds anonymously. As previously noted concerning the first factor, several courts have allowed student-plaintiffs, like John, to proceed under a pseudonym in cases against their colleges for alleged mishandling of student disciplinary proceedings. Further, unlike other cases where prejudice to the defendant is a concern because the defendant did not know the plaintiff's identity, NU knows both John's and Jane's identities and will be entitled to the same full discovery just as if John was litigating under his name. *See, e.g., Doe v. Notre Dame*, supra, at *6, ¶ 29 (finding that

10

there was no prejudice to the Defendant University where NU knew the identities of all students involved); *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 687 (11th Cir. 2001) ("The only justification the defendants offer for stripping Roe of her privacy is the argument that they will not be able to adequately conduct discovery without knowing her true identity. However, that argument is eviscerated by Roe's offer to disclose her name to the defendants for discovery purposes on condition that they do not disclose it to the general public."); *AF Holdings LLC v. Doe*, No. 12 C 4222, 2012 U.S. Dist. LEXIS 162487, at *8 (N.D. Ill. Nov. 13, 2012) (holding no prejudice where the Defendant knows Movant's identity and is able "to prosecute its claims appropriately").

**Seventh**, John has taken meticulous steps to keep his identity confidential. John has not disclosed his involvement in this matter beyond the reported witnesses, his immediate family, NU administrators and employees, and his attorneys. Further, as previously noted concerning the third factor, NU is prohibited according to federal law from disclosing John's identity and records related to his disciplinary proceedings to third parties without John's consent. *See Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g* (protecting the privacy interests of student education records). *Cf. Doe v. Bell Atl. Bus. Sys. Servs.*, 162 F.R.D. 418, 421-22 (D. Mass. 1995) (denying motion to proceed under pseudonym where plaintiff, an alleged rape victim filing an employment discrimination claim, had already been named in a related case and in publicly available administrative complaints). This factor weighs in John's favor as well. Notably, John's identity has never been publicly disclosed, unlike litigants in other cases.

**Eighth**, although there is a public interest in the legal issues raised in John's Complaint – and in similar complaints brought by an increasing number of accused students who have been forced to assert their rights in the courts against their colleges for wrongful student disciplinary actions – the public has little interest in knowing, and no compelling need to know, the actual identities of

11

the student-litigants and their accusers. There is "an atypically weak public interest in knowing the litigants' identities" due to the "purely legal nature of the issues presented …." *Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y. 2006); *Doe v. Notre Dame*, supra, at *7, ¶ 30 ("[T]the actual identities of the individuals are of minimal importance to the public."); *City of Indianapolis*, 2012 U.S. Dist. LEXIS 24686, at *6 (finding "the public's interest in disclosure is weakened because Plaintiff's case presents a pure issue of law …."). Moreover, protecting John's identity will not "impede the public's ability to follow the proceedings." *Doe v. Stegall*, 653 F.2d 180,185 (5th Cir. 1981) ("Party anonymity [will] not obstruct the public's view of the issues joined or the court's performance in resolving them."). John only seeks to protect his identity and the identity of his accuser. All filings submitted to the Court will be a matter of public record and will be available for public review. *See Malibu Media, LLC v. Reynolds*, No. 12 C 6672, 2013 U.S. Dist. LEXIS 31228, at *20-21 (N.D. Ill. Mar. 7, 2013) (harm to the public interest "is minimal" because the plaintiff is not requesting that the case proceeds under seal or by a blanket protective order.)

Although the public has a legitimate interest in the legal issues John raises in his Complaint – including issues of fairness, the right of male students accused of misconduct to a process that is free of bias and gender discrimination, and the due process rights owed by colleges and universities to accused students in misconduct disciplinary proceedings – John's actual identity is of minimal importance to the public. If John's identity becomes a matter of public record, the negative publicity it would bring to John would entirely defeat the purpose of the suit, which is to avoid the harm to his reputation and educational and employment prospects from NU's biased and irreparably tainted investigation and disciplinary process. If he is forced to prosecute the case in his name, such disclosure would serve only to augment such harm and render useless the suit's primary aim. The injury to John's reputation and the grievous personal harm that he seeks to avoid through this action would occur if he is forced to disclose his identity. John is not a public figure,

12

and having his identity publicly disclosed would serve as a deterrent in asserting his rights in this action and would have a chilling effect on others who are similarly situated. John has maintained the confidentiality of his identity and has revealed information about the student disciplinary proceedings to which he was subjected only to a small inner circle of persons with a need to know.

John has a substantial privacy right which outweighs the public's interest in access to identities of litigants and the customary presumption of openness in judicial proceedings. Although there is a significant public interest in the legal issues raised in John's Complaint – and in similar complaints brought by an increasing number of accused students who have been forced (like John) to assert their rights in the courts against their schools for wrongful student disciplinary actions – the public has little interest in knowing, and no compelling need to know, the actual identities of the student-litigants. There is an "atypically weak public interest in knowing the litigants' identities" due to the "purely legal nature of the issues presented." *Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y. 2006). Moreover, protecting John's identity" will not impede the public's ability to follow the proceedings." *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001); *accord Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) ("Party anonymity [will] not obstruct the public's view of the issues joined or the court's performance in resolving them."). John only seeks to protect his identity and the identity of his accuser. All filings submitted to the Court will be a matter of public record and will be available for public review.

**Ninth**, John may be deterred from pursuing his case in court if he must be publicly identified. Other than the Court's permission to proceed anonymously John has no other alternative other than withdrawing the lawsuit to maintain his confidentiality. If this Motion is not granted, John will likely withdraw this lawsuit as the allegations are sufficiently personal enough that most people in John's closest inner circle do not know of (e.g. suicidal ideations, mental health struggles). *See Doe v. Hartford Life and Accident Ins. Co.*, 237 F.R.D. 545, 550 (D.N.J. 2006)

13

(holding a dropped case because of the denial of anonymity, "would preclude the adjudication of a possibly meritorious claim that is ripe and ready for judicial review and frustrate the goal of judicial economy since future litigation will be wasted on an issue that is presently ready for adjudication."). If John is publicly identified, the NU community and anyone loosely associated with the parties will have all the information necessary to ascertain Jane's identity quickly and easily. Maintaining John's anonymity is imperative to maintaining the anonymity of all those involved in his case. The impact of this chilling effect may also deter other similarly-situated individuals – including those who have been falsely accused of misconduct and unfairly adjudicated by their universities – who turn to the courts as their last best hope to vindicate their rights. Courts have determined that there is a substantial public interest in ensuring that cases involving important issues like those in John's case are adjudicated without the risk of stigmatization. Therefore, this factor weighs in John's favor.

### III. CONCLUSION

For the foregoing reasons, Plaintiff John Doe respectfully requests that the Court grant his Motion for Permission to Proceed Under Pseudonym as follows:

1. John shall be identified on the public docket as John Doe and his accuser as Jane Roe.

2. NU may identify John or Jane during discovery, fact investigation, and depositions. Any documents filed with the Court bearing John's or Jane's name or personal identification information must either be filed under seal or redacted by the party filing them;

3. Alternatively, John requests that this Court allow him to proceed pseudonymously on a provisional basis until this Court resolves any dispositive motions;

4. John shall not proceed anonymously at the trial of this matter;

14

5. By August 15, 2022, John shall file under seal his true name and address. *Doe v. Purdue Univ.*, No. 4:18-CV-72 JVB, 2019 WL 4118659, at *1–2 (N.D. Ind. Aug. 28, 2019);

6. Alternatively, Plaintiff, John Doe, respectfully requests that this Court stay the determination of the Motion pending an appearance by Defendant NU to determine if it opposes this Motion.

Respectfully submitted,

John Doe

Dated: August 4, 2022

Gianna Scatchell, Esq.
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 330
F: (312) 846-6363
E: gia@dispartilaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Motion for Permission to Proceed Under a Pseudonym to be filed using this Court's ECF filing system on August 3, 2022.

By:_____
Gianna Scatchell, one of Plaintiff's Attorneys