IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 22 C 3934 |
| | ) |
| NORTHWESTERN UNIVERSITY | ) |
| | ) |
| Defendant. | ) |

Order

John Doe is a Chinese national and a full-time undergraduate student at Northwestern University's Qatar campus ("NU-Q").[1] In September of 2021, he was involved in an altercation with his friend, Jane Roe, a fellow Northwestern student whom he had invited to his apartment along with two other friends. John claims that he was traumatized by the incident and sought counseling from Northwestern's Counseling and Psychological Services (CAPS) in early October, but CAPS failed to follow up with him after his initial visit. The day after this visit, however, a Qatar-based Northwestern employee who did not witness John's altercation with Jane filed a "Person of Concern" report with Northwestern's Office

---

[1] Northwestern is a private university whose main campus is in Evanston, Illinois. It operates a satellite campus in Education City, Qatar. FAC at ¶ 12.

of Community Standards ("OCS") identifying John as a "student who has engaged in violent, threatening or potentially threatening behaviors or whose conduct or actions raise concerns about their potential for violence or suicide," triggering Northwestern's School Safety Protocol. FAC at ¶ 29. John was suspended from NU-Q on an interim basis during Northwestern's investigation of the incident and was suspended for a further semester following its conclusion.

In this lawsuit, John claims that Northwestern conducted its investigation and disciplinary proceedings in a manner that discriminated against him on the basis of his disability in violation of Title III of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act and discriminated against him based on his sex in violation of Title IX of the Education Amendments Act of 1972. John also asserts state law claims for breach of contract and negligent infliction of emotional distress. Finally, John brings a claim for equitable relief in the form of a declaration that Northwestern's "rules, regulations, and guidelines are unlawful as applied," as well as an injunction to require Northwestern to reverse the outcome and findings of his

disciplinary proceedings and to seal, expunge, and/or destroy the records of those proceedings.[2]

Northwestern moves to dismiss the complaint in its entirety, arguing that each of John's federal claims seeks extraterritorial application of statutes that do not apply outside of the United States, and that he fails to state viable state law claims. Because I agree with the first argument, I dismiss the federal claims and decline to assert supplemental jurisdiction over the state claims.

"It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010). This canon of statutory interpretation gives rise to a presumption that federal statutes legislate only domestic matters and have no extraterritorial effect. "When a statute gives no clear indication of an extraterritorial application, it has none." *Id*. None of the statutes John asserts overcomes this presumption. To the contrary, the text of two of them—Title IX and the Rehabilitation Act—explicitly reinforces it.

Title IX provides that "[n]o person *in the United States* shall, on the basis of sex, be excluded from participation in, be

---

[2] All of these requests appear in a count captioned "Declaratory Judgment" that does not explicitly seek an injunction, but aspects of the relief he requests are injunctive in nature.

denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681 (emphasis added). Similarly, the Rehabilitation Act prohibits "any program or activity receiving Federal financial assistance" from discriminating against "individual[s] with a disability *in the United States*" based on their disability. 29 U.S.C. § 794(a) (emphasis added). Courts interpreting these statutes have uniformly held, based on this language, that they have no extraterritorial application. *See, e.g., Galligan v. Adtalem Glob. Educ. Inc.*, No. 17 C 6310, 2019 WL 423356, at *3 (N.D. Ill. Feb. 4, 2019) (concluding that the Rehabilitation Act text "supports rather than rebuts the presumption against extraterritoriality" and dismissing claim under Section 504 because "the program, exclusion, denial, and discrimination all took place in St. Kitts and Nevis, where the Rehab Act does not apply"); *Harbi v. Massachusetts Inst. of Tech.*, No. CV 16-12394-FDS, 2017 WL 3841483, at *3 (D. Mass. Sept. 1, 2017) (dismissing Title IX claim of a French student who took an online course while in France, observing that "[u]nder the plain language of § 1681, the protections of Title IX extend only to 'person[s] in the United States'"); *Doe T.L.J. v. Univ. of Cent. Missouri*, No. 4:20-00714-CV-RK, 2020 WL 7700101, at *2 (W.D. Mo. Dec. 28, 2020) ("Title IX does not apply extraterritorially."); *Archut v. Ross Univ. Sch. of Veterinary Med.*, No. CIV.A. 10-1681

4

MLC, 2012 WL 5867148, at *10 (D.N.J. Nov. 19, 2012), aff'd, 580 F. App'x 90 (3d Cir. 2014) ("[b]ecause the [Rehabilitation Act] contains no affirmative indication that Congress intended the law to apply extraterritorially, the Court concludes that [the defendant] is not liable for any alleged violations of the statute."). John identifies no contrary authority, and I have found none.[3]

Although the text of Title III of the ADA does not explicitly limit its application to domestic conduct, several courts have examined the issue and have concluded that it has no extraterritorial effect. *See*, e.g., *Galligan*, 2019 WL 423356, at *3; *Guess v. St. Martinus Univ.*, No. 2:19-cv-12159, 2021 WL 1387784, at *6 (E.D. Mich. Apr. 13, 2021). As these courts have explained, Title III's silence as to its extraterritorial application triggers the presumption that the statute applies only domestically, and the fact that Title I of the ADA, which prohibits employment discrimination, explicitly applies outside the United States buttresses this conclusion. *See Galligan*, 2019 WL 423356 at *3 (quoting *Morrison*, 561 U.S. at 265 ("[W]hen a statute provides

---

[3] John cites two cases by their captions only, *Bird v. Lewis and Clark College* and *Tecza v. University of San Francisco*, but he does not identify any specific decision in these cases to support his argument. Nevertheless, I have reviewed the reported decisions in each case, and none offers any basis for departing from the conclusion that numerous other courts have reached, particularly in light of *Morrison*.

5

for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms."); *Guess*, 2021 WL 1387784, at \*6 (same). Again, John cites no authority to the contrary.

But this is not the end of the inquiry. "If the statute is not extraterritorial, then [the court must] determine whether the case involves a domestic application of the statute, and [does so] by looking to the statute's 'focus.'" *Galligan* 2019 WL 423356, at \*3 (quoting *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2101 (2016)) (alteration in *Galligan*). It is not enough that a complaint allege *some* domestic activity. *See Morrison*, 561 U.S. at 266 ("the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case."). Here, the First Amended Complaint describes an altercation that occurred in Qatar, after which a Qatar-based Northwestern employee triggered disciplinary proceedings against John by filing a Person of Concern report in Qatar. After the altercation, John allegedly sought counseling from Northwestern's CAPS office in Qatar, and he faults that office for failing to follow up with him after his visit. Moreover, John alleges that his suspensions injured him in Qatar by excluding him from Northwestern's campus, programs, and activities in Qatar. Plainly, the bulk of the events giving rise to John's claims occurred in Qatar.

6

It is true that John alleges that the investigation into his conduct was carried out by Evanston-based employees, but that is an insufficient basis for concluding that John seeks domestic application of federal law. There is no dispute that John himself was in Qatar for the entire period relevant to his claims. As the court explained in *Harbi* with respect to Title IX, "[t]he statute is not directed to the place where the discriminatory conduct occurred, or the place where the person who engaged in the discriminatory conduct was located; it is directed to the location of the person who is protected by the statute." 2017 WL 3841483, at *3. Similarly, the focus of both Title III of the ADA and Section 504 of the Rehabilitation Act is on ensuring that disabled individuals have meaningful access to programs, activities, or services *in the United States*. John does not claim to have been denied access to any such programs. Accordingly, I conclude that John's federal claims must be dismissed because they assert unauthorized extraterritorial application of federal statutes.

This leaves only John's claims under state law, over which I discern no compelling reason to retain jurisdiction. *See Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when 'all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the

merits.'") (quoting *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)).

For the foregoing reasons, Northwestern's motion to dismiss is granted.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: April 13, 2023